IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

STATESBORO DIVISION

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2006 JUL 24  PM 2: 40

CLERK *L. Flanders*
SO. DIST. OF GA.

| | | |
|---|---|---|
| WILLIE JAMES WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 606-003 |
| | ) | |
| GLENN RICH, Warden, et al., | ) | |
| | ) | |
| Defendants. | ) | |

---

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

---

The captioned matter, brought pursuant to 42 U.S.C. § 1983, is before the Court on Defendants' motions to dismiss (doc. nos. 2, 4-5, 7), which the Court has converted to motions for summary judgment. (See doc. no. 9.) For the reasons below, the Court **REPORTS** and **RECOMMENDS** that the motions for summary judgment be **GRANTED**, that Plaintiff's case be **DISMISSED** without prejudice for failure to exhaust administrative remedies, that an appropriate **FINAL JUDGMENT** be entered in favor of Defendants, and that this civil action be **CLOSED**.

### I. BACKGROUND

A.  **Plaintiff's Complaint**

In his complaint, filed January 4, 2006, Plaintiff avers that, on January 5, 2004, while he was an inmate at Rogers State Prison ("Rogers"), in Reidsville, Georgia, Defendants Lieutenant Langston ("Langston") and Sergeant Burns ("Burns") brutally beat him. (Doc. no. 1, p. 3.) Defendants Deputy Warden R.D. Collins ("Collins"), and Warden Glenn Rich ("Rich") allegedly condoned this behavior. (Id. at 3-5.) Plaintiff also avers, in conclusory fashion, that he exhausted administrative remedies. (Id. at 3.)

**B.    Defendants' Arguments**

On the other hand, Defendants argue, among other things, that because Plaintiff failed

to file a grievance regarding the use-of-force incident alleged in the complaint, Plaintiff failed

to properly exhaust his administrative remedies prior to filing suit as required by the Prison

Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e(a).[1]  Accordingly, Defendants argue that

the instant suit should be dismissed.  In support of this argument, Defendants have provided

two affidavits from Ms. Sarah Draper, Manager of the Office of Investigations and Compliance

for the Georgia Department of Corrections ("DOC").  See Draper Aff. I (attached to doc. no.

3) & Draper Aff. II (attached to doc. no. 12).  Defendants also provide the affidavit of Ms.

Sandra Moore, Deputy Warden of Care and Treatment at Rogers.  See Moore Aff. (attached

to doc. no. 3).  Finally, Defendants provide the version of DOC Standard Operating Procedure

("SOP") IIB05-0001 § VI[2] in effect at the time of the alleged incident of excessive force, as

well as the version currently in effect.  See SOP IIB05-0001 § VI (Eff. date June 1, 2004)

(attached at doc. no. 3); SOP IIB05-0001 § VI (Eff. date May 1, 2003) (attached to doc. no.

12).

Ms. Draper and Ms. Moore provide that, at all times relevant to this litigation, all

Georgia state prisons, including Rogers, have maintained an inmate grievance procedure

pursuant to SOP IIB05-0001 § VI.  Draper Aff. I, ¶¶ 6-14; Draper Aff. II, ¶¶ 6-9; Moore Aff.

¶¶ 4-5.  According to both Ms. Moore and Ms. Draper, this administrative remedy is available

---

[1] The Court is aware that the record contains no proof that Defendants were ever served with Plaintiff's complaint.  Nevertheless, as Defendants have not raised insufficiency of service of process as a defense, the Court deems any service-related defenses waived.  See Fed. R. Civ. P. 12(h)(1); see also Pardazi v. Cullman Med. Ctr., 896 F.2d 1313, 1317 (11th Cir. 1990) (explaining that district court may not interpose *sua sponte* a service-related defense where defendants have waived the defense by failing to raise it in their pre-answer motion to dismiss); T & R Enters. Inc. v. Cont'l Grain Co., 613 F.2d 1272, 1277 (5th Cir. 1980) (waivable defenses must be brought in a party's "first defensive move").

[2] SOP IIB05-0001 § VI governs the administrative grievance procedure available to Georgia inmates.

2

to all Georgia inmates, including Plaintiff. <u>Id.</u> Ms. Draper and Ms. Moore also contend that

a search of Plaintiff's inmate records demonstrates that he never filed any grievance regarding

the use-of-force incident alleged in the complaint. Draper Aff. I, ¶¶ 15-16; Draper Aff. II, ¶¶

10-11; Moore Aff., ¶ 6. Ms. Moore also explains that Plaintiff was transferred from Rogers

to Rutledge State Prison ("Rutledge") on July 15, 2004. Moore Aff., ¶ 6. Also of note,

Defendants have provided Plaintiff's grievance history, which indicates that he has filed a total

of seven grievances while incarcerated, the most recent of which was filed on May 22, 2003.

Defs.' Ex. 1 (attached to doc. no. 3).

**C.      Plaintiff's Response**

In response, Plaintiff, through counsel, argues that he did not pursue administrative

remedies because Langston threatened to beat him again if he filed a grievance. (Doc. no. 8,

p. 1.)  Plaintiff's counsel also provides that those "responsible" for processing grievances at

Rogers were "the same persons responsible" for violence against several inmates, including

Plaintiff. (<u>Id</u> at 2.)  According to Plaintiff's counsel, Plaintiff's "general knowledge" that

inmates who resorted to administrative remedy would be beaten rendered the grievance process

"practically unavailable." (<u>Id.</u> at 7.)

In support of counsel's assertions, Plaintiff has filed an affidavit. <u>See</u> Pl.'s Aff. I

(attached to doc. no. 8). Therein, Plaintiff provides, in vague and nonspecific terms: 1) he was

brutally beaten "numerous times;" 2) he did not file a grievance because he was threatened

with "physical and mental harm," and unnamed "officers and officials" at Rogers "put [him]

in fear for [his] life." <u>Id.</u>, ¶¶ 2-3. According to Plaintiff, those persons responsible for the

beating and for processing any grievances threatened him "by telling [him] that any allegations

would be covered up." <u>Id.</u>, ¶ 4. Plaintiff also states that, when he "asked to file a grievance,"

Langston "threatened to beat" him. <u>Id.</u>, ¶ 5.

3

Plaintiff also provides a separate affidavit, wherein he describes the beating alleged in the complaint. See Pl.'s Aff. II (attached to doc. no. 8). In further support of his assertions, Plaintiff also proffers: 1) an affidavit from former corrections officer Tommy Cardell describing incidents of inmate abuse at Rogers, prison counselors' attempts to discourage and prevent inmates from filing grievances, and Defendants' violent reprisals when inmates resorted to the administrative process, see Cardell Aff. (attached to doc. no. 8); and 2) a statement from inmate Gregory Bryant ("Bryant") describing Defendants' retaliation against him for filing grievances. See Bryant Aff. (attached to doc. no. 8).

**D.     The Administrative Grievance Process**

Therefore, the key issue in this case is whether Plaintiff has complied with § 1997e(a). Before assessing this question, it will be helpful to explain the grievance procedure used in the Georgia state prison system. Under the version of SOP IIB05-0001 § VI in effect at the time of Plaintiff's alleged beating, an inmate had five business days "from the date the inmate discovered, or reasonably should have discovered, the incident giving rise to the complaint" to initiate the administrative process by filing a formal grievance. SOP IIB05-0001 § VI(D) (Eff. date May 1, 2003). This time limit could be waived for good cause shown. Id. § VI(D)(5); see also Draper Aff. II, ¶ 8. Of note, the SOP also explicitly provided that an inmate could bring a grievance regarding an event which occurred at "a facility other than the one in which the inmate [was] currently assigned." SOP IIB05-0001 § VI(D)(5)(a) (Eff. date May 1, 2003).

Under the current version of SOP IIB05-0001 § VI, an inmate has ten calendar days from "the date the offender knew, or should have known, of the facts giving rise to the

4

grievance" to initiate the administrative process by filing an "informal" grievance.[3]  SOP IIB05-0001 § VI(B)(5) (Eff. date June 1, 2004).  Like the former version of SOP IIB05-0001 § VI, the current SOP allows for waiver of its timeliness provisions "for good cause."  <u>Id.</u> § VI(D)(2); <u>see also</u> Draper Aff. I, ¶ 14.  Also like the former SOP, the current SOP explicitly provides that inmates may grieve incidents which occurred at a "different facility."  <u>Id.</u> § VI(F)(5).

Also of note, under both the former and current SOPs, an inmate may bypass the normal grievance procedure and file an "emergency grievance" in cases involving allegations of excessive force.  <u>See</u> SOP IIB05-0001 § VI(E) (Eff. date June 1, 2004); SOP IIB05-0001 § VI(F) (Eff. date May 1, 2003); <u>see also</u> Draper Aff. I, ¶ 13; Draper Aff. II, ¶ 9.  Having clarified the factual background of the case, the Court next explains the legal standard applicable to the instant motions for summary judgment.

## II.  DISCUSSION

### A.   Generally Applicable Summary Judgment Standard

Summary judgment is appropriate only if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Applicable substantive law identifies which facts are material in a given case.[4]  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

When seeking summary judgment, the movant must show, by reference to materials on file, that there are no genuine issues of material fact to be decided at a trial.  <u>Clark v. Coats</u>

---

[3]The "informal" grievance process simply adds another layer to the administrative process.  After completing the informal grievance procedure, the inmate is issued a formal grievance, which he may pursue if he is unsatisfied by the resolution of his informal grievance.  <u>See</u> SOP IIB05-0001 § VI(B), (C).

[4]The Court is mindful that for purposes of summary judgment, only disputes about material facts are important.  That is, "[t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case."  <u>McCormick v. City of Fort Lauderdale</u>, 333 F.3d 1234, 1244 (11th Cir. 2003) (citation omitted).

& Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). If the burden of proof at trial rests with the *movant*, to prevail at the summary judgment stage, the movant must show that, "on all the essential elements of its case . . . , no reasonable jury could find for the nonmoving party." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) (*en banc*). On the other hand, if the *non-moving* party has the burden of proof at trial, the movant may prevail at the summary judgment stage either by negating an essential element of the non-moving party's claim or by pointing to specific portions of the record that demonstrate the non-moving party's inability to meet its burden of proof at trial. Clark, 929 F.2d at 606-08 (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). Merely stating that the non-moving party cannot meet its burden at trial is not sufficient. Clark, 929 F.2d at 608. Evidence presented by the movant is viewed in the light most favorable to the non-moving party. Adickes, 398 U.S. at 157.

If the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark, 929 F.2d at 608. The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981). Rather, the non-moving party must respond either by affidavits or as otherwise provided in Fed. R. Civ. P. 56. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255 (quoting Adickes, 398 U.S. at 158-59). A genuine issue of material fact is said to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

**B.    Unique Difficulties Posed By the Instant Case**

Before assessing the merits, the Court should also note that factual determinations

regarding exhaustion (or lack thereof) under § 1997e(a) often pose problems for the district

courts. In the instant case, the Court is faced with a "swearing match" between prison officials

and an inmate regarding whether intimidation rendered administrative remedies "unavailable."

As a general rule, "[i]ssues of credibility and the weight afforded to certain evidence are

determinations appropriately made by a finder of fact and not a court deciding summary

judgment." McCormick, 333 F.3d at 1240 n.7.

> Nevertheless,
>
>> in the rare circumstance where the plaintiff relies almost exclusively on his
>> own testimony, much of which is contradictory and incomplete, it will be
>> impossible for a district court to determine whether "the jury could reasonably
>> find for the plaintiff," Anderson, 477 U.S. at 252, and thus whether there are
>> any "genuine" issues of material fact, without making some assessment of the
>> plaintiff's account.

Jeffreys v. City of New York, 426 F.3d 549, 554 (2d Cir. 2005). Similarly, the Supreme Court

has explained that "discredited testimony" cannot be relied upon to resist summary judgment.

See Anderson, 477 U.S. at 256-57. Thus, to the extent Plaintiff relies upon his own self-

serving allegations, the Court properly considers whether a "reasonable juror would undertake

the suspension of disbelief necessary to credit the allegations." Jeffreys, 426 F.3d at 555.

Furthermore, as the presiding District Judge has explained in a companion case:

> Congress enacted § 1997e(a) of the [PLRA] to *curtail* inmate litigation,
> not create an entire new layer of jury trials in the very overburdened court
> system that PLRA was meant to relieve. To hold that Priester is entitled to a
> jury trial on this preliminary issue [whether administrative remedies were
> "available"] would open the floodgates to even more litigation. Were this
> Court to hold otherwise, how many *convicted criminals*--in a legal world
> where civil-case originating perjury prosecutions are at best a rarity--would *not*
> then claim that their guards refused to avail them grievance forms or otherwise
> did something to excuse the exhaustion requirement? How many inmates like
> Priester, after pointing to the ensuing swearing match, would *not* then demand
> a jury trial on this *preliminary* issue, and thereby create a *second* litigation
> layer on top of the "merits" layer?
>     . . . . [T]he Court concludes that . . . . exhaustion constitutes a
> preliminary issue for which no jury trial right exists, and therefore judges can

and should make credibility determinations on exhaustion-excusal issues.

Stanley v. Rich, CV 605-075, 2006 WL 1549114, at *2-3 (S.D. Ga. June 1, 2006), *appeal docketed*, No. 06-13502 (11th Cir. June 22, 2006) (quoting Priester v. Rich, CV 605-071, doc. no. 41, pp. 6-7 (S.D. Ga. Apr. 4, 2006), *appeal docketed*, No. 06-12290 (11th Cir. Apr. 21, 2006)).

Thus, the Court will resolve the exhaustion issue and will not punt the matter to a jury, notwithstanding any ambiguities or uncertainties in the evidence. Of course, the Court is empowered to conduct an evidentiary hearing if necessary to resolve the exhaustion issue. See, e.g., Johnson v. Garraghty, 57 F. Supp.2d 321, 329 (E.D. Va. 1999). Nevertheless, the need for such a hearing would be rare.[5] See, e.g., Knuckles El v. Toombs, 215 F.3d 640, 642 (6th Cir. 2000) ("[C]ourts should not have to hold time-consuming evidentiary hearings in order simply to determine whether it should reach the merits or decline under [§ 1997e(a)]."). Here, Plaintiff has not requested a hearing nor offered any reason to suppose that he has any additional evidence bearing on the exhaustion issue. Accordingly, the Court resolves the matter of exhaustion, including any credibility issues, on the basis of the record now before the Court.

## C.     Plaintiff's Failure to Exhaust Available Administrative Remedies

### 1.     The Sole Issue is Whether Administrative Remedies Are Available.

Section 1997e(a), provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." The PLRA's mandatory exhaustion requirement applies to all federal claims

---

[5]Indeed, it is at least arguable that affording prisoners evidentiary hearings on exhaustion-related issues would frustrate the PLRA's purpose of curtailing inmate litigation.

brought by any inmate. <u>Porter v. Nussle</u>, 534 U.S. 516, 520 (2002). Moreover, the Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or inadequate. <u>Alexander v. Hawk</u>, 159 F.3d 1321, 1325-26 (11th Cir. 1998). Simply put, as the plain language of § 1997e(a) makes clear, if an administrative remedy is "available," it must be exhausted. 42 U.S.C. § 1997e(a); <u>see also Alexander</u>, 159 F.3d at 1326 (explaining that under PLRA courts are "to focus solely on whether an administrative remedy program is 'available'").

Furthermore, the PLRA also "requires proper exhaustion." <u>Woodford v. Ngo</u>, 548 U.S. __, 2006 WL 1698937, at *7 (2006). In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way. <u>Id.</u> at *5 (internal quotation omitted). If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he procedurally defaults his claims. <u>Johnson v. Meadows</u>, 418 F.3d 1152, 1159 (11th Cir. 2005), <u>cert. denied</u>, 548 U.S. __, 2006 WL 1788335 (2006). Put plainly, "a Georgia prisoner 'must timely meet the deadlines or the good cause standard of Georgia's administrative grievance procedures.'"[6] <u>Salas v. Tillman</u>, No. 05-10399, 162 Fed. Appx. 918, 920, 2006 WL 122426, at *2 (11th Cir. Jan. 17, 2006) (quoting <u>Johnson</u>, 418 F.3d at 1155); <u>see also Harper v. Jenkin</u>, 179 F.3d 1311, 1312 (11th Cir. 1999) ("Since appellant has not sought leave to file an out-of-time grievance, he cannot be considered to have exhausted his administrative remedies.").

Of particular importance in the instant case, the Supreme Court has explained that the exhaustion requirement applies even to the prisoner alleging that the use of excessive force is

---

[6]Similarly, in order to exhaust all available administrative remedies, an inmate must pursue an administrative appeal if his grievance is denied. <u>Moore v. Smith</u>, 18 F. Supp.2d 1360, 1362 (N.D. Ga. 1998).

9

a "prevailing" or "general circumstance" at his place of incarceration. Porter, 534 U.S. at 531,

532. Justice Ginsberg, writing for a unanimous Court, explained that a prisoner's allegations

of "a prolonged and sustained pattern of harassment and intimidation by corrections officers,"

cannot serve to remove his case from the ambit of § 1997e(a). Id. at 530. Therefore,

Plaintiff's notion that a prisoner's alleged "general knowledge" (see doc. no. 8, p. 7) of

retaliatory beatings will serve to obviate the exhaustion requirement is difficult to square with

the Supreme Court's conclusion that the exhaustion requirement applies even when the

prisoner alleges that "beatings are widespread or routine." Id. at 531.

Rather, in order to demonstrate that administrative remedies were unavailable, Plaintiff

must point to specific facts showing that Defendants inhibited him from utilizing the grievance

process. Cf. Boyd v. Corr. Corp. of Am., 380 F.3d 989, 998 (6th Cir. 2004) ("nonspecific

allegations of fear" and "subjective feeling[s] of futility" no excuse for failure to exhaust

administrative remedies). Of course, those federal courts to consider the issue have held that

threats of violent reprisal can, under certain circumstances, render administrative remedies

"unavailable" or otherwise justify an inmate's failure to pursue them. See, e.g., Hemphill v.

New York, 380 F.3d 680, 686-91 (2d Cir. 2004).    More generally, courts have held that

prison officials may, as a result of their own conduct, become equitably estopped from relying

upon § 1997e(a).[7, 8]

Of particular note, in Miller v. Tanner, 196 F.3d 1190, 1194 (11th Cir. 1999), the

---

[7] See, e.g., Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004)(per curiam); Ziemba v. Wezner, 366
F.3d 161, 163 (2d Cir. 2004); Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003); Miller v. Norris, 247 F.3d
736, 740 (8th Cir. 2001); Wright v. Hollingsworth, 260 F.3d 357, 358 n.2 (5th Cir. 2001).

[8] To the extent Plaintiff is arguing that Defendants should be estopped from relying on § 1997e(a)
because of their own misconduct, it is his burden to establish his entitlement to this equitable remedy. See
Lewis v. Washington, 300 F.3d 829, 834 (7th Cir. 2002).

Eleventh Circuit explained that prison officials cannot "unequivocally" tell an inmate that resort to administrative remedies is "precluded" or "even prohibited" and then rely upon § 1997e(a) to argue that the inmate failed to exhaust available administrative remedies. Taken together, these cases stand for the simple proposition that prison officials should not benefit from conduct which inhibits an inmate from properly exhausting administrative remedies. That principle of law does not alter the key inquiry--whether administrative remedies were actually "available" to Plaintiff prior to the filing of the instant suit.

**2.      Plaintiff's Intimidation Argument Fails.**

In this instance, the Court concludes that Plaintiff has not shown that Defendants prevented or inhibited him from exhausting administrative remedies prior to filing suit. Initially, the believability of Plaintiff's averment is eroded by the fact that other inmates at Rogers who have recently brought excessive force claims against Defendants did exhaust administrative remedies. See, e.g., Hooks v. Rich, CV 605-065 (S.D. Ga. July 13, 2005); Jamison v. Rich, CV 605-066 (S.D. Ga. July 13, 2005). Furthermore, Plaintiff makes no attempt to explain his failure to utilize the "emergency" grievance process, a remedy created by the DOC for situations such as that alleged by Plaintiff. Regardless, Plaintiff's statements that Langston "threatened" him and that beatings at Rogers were common, standing alone, do not show that Plaintiff was actually prevented or prohibited from utilizing administrative remedies. See Ortiz v. McBride, 380 F.3d 649, 654 (2d Cir. 2004) (prisoner alleging "only that he was threatened when he complained" had not shown that administrative remedies were unavailable).

More importantly, fear of prison staff at Rogers cannot explain Plaintiff's failure to pursue administrative remedies following his transfer to Rutledge. In analogous cases, the Court has explained that if a change in an inmate's conditions of confinement--*e.g.*, transfer

11

to another prison--removes the prospect of retaliation for pursuing administrative remedies and renders the grievance process "available," the inmate's failure to exhaust can no longer be justified.[9] Simply put, even assuming *arguendo* (which the Court does not) that Plaintiff was prevented from pursuing administrative remedies prior to his transfer, Plaintiff's failure to pursue an out-of-time grievance following his arrival at Rutledge requires the Court to dismiss the instant suit under § 1997e(a). See Johnson, 418 F.3d at 1155; Harper, 179 F.3d at 1312.

Once administrative remedies became available, Plaintiff was obliged to exhaust them before filing suit. See Hilton v. Secretary for Dep't of Corr., No. 03-13492, 170 Fed. Appx. 600, 605, 2005 WL 3802979, at *5 (11th Cir. Nov. 1, 2005). In Hilton, a state prisoner alleged that he could not exhaust administrative remedies because he was denied grievance forms while in "administrative confinement." Id. The Eleventh Circuit explained that "Hilton's contention . . . [did] not entitle him to relief because he fail[ed] to allege that he was unable to obtain these forms once he was released from confinement." Id. Thus, albeit in an unpublished opinion, the Eleventh Circuit has endorsed this Court's view that once the impediment to exhaustion is removed, an inmate's failure to utilize administrative remedies can no longer be justified.

Of course, Plaintiff may argue that it would be unfair to require him to exhaust administrative remedies which did not become available to him until months after the beating alleged in the complaint. (Plaintiff was allegedly beaten in January 2004; he was not transferred to Rutledge until July 2004.) The Court disagrees. Under the PLRA's "strict exhaustion" requirement, administrative remedies are deemed "available" whenever "'there

---

[9]See, e.g., Priester, CV 605-071, doc. no. 35, *adopted by*, doc. no. 41; Langford v. Rich, CV 605-073, doc. no. 33, *adopted by*, doc. no. 40 (S.D. Ga. June 1, 2006), *appeal docketed*, No. 06-13425 (11th Cir. Jun. 27, 2006); Bryant v. Rich, CV 605-064, doc. no. 38, *adopted by* doc. no. 51 ((S.D. Ga. Jan. 23, 2006), *appeal docketed*, No. 06-11116 (11th Cir. Feb. 9, 2006).

is the possibility of at least some kind of relief.'"[10]   Johnson, 418 F.3d at 1155, 1156. Likewise, the Court has no discretion to inquire into whether administrative remedies are "plain, speedy, [or] effective." Porter, 534 U.S. at 524; see also Alexander, 159 F.3d at 1326. As the Court has noted *supra*, the plain language of § 1997e(a) forbids any inquiry except into whether administrative remedies are "available."

Furthermore, in interpreting the PLRA, it is appropriate to look to the "substantively similar" exhaustion rules applicable in habeas cases "for guidance." Woodford, 548 U.S. at __, 2006 WL 1698937, at *4, 6; see also Johnson, 418 F.3d at 1157-59 (analogizing § 1997e(a) with the exhaustion requirement in habeas cases to reason that § 1997e(a) contains a procedural default component). In habeas cases, the unavailability of state court remedies excuses a state prisoner's failure to exhaust. See 28 U.S.C. § 2254(b)(1)(B) (habeas applicant not required to exhaust if "there is an absence of available State corrective process"). Thus, a habeas petitioner's failure to exhaust may be excused, for example, "if the state court has unreasonably or without explanation failed to address petitions for relief." Hollins v. Davis, 941 F.2d 1471, 1475 (11th Cir. 1991).

Nevertheless, a habeas petitioner cannot "be deemed to have exhausted the remedies available . . . if he has the right under the law of the State to raise, *by any available procedure*, the question presented." Id. § 2254(c) (emphasis added). Also, like the PLRA, under § 2254(c), it is irrelevant whether resort to state court remedies would have been futile. See, e.g., Waldrop v. Jones, 77 F.3d 1308, 1315 (11th Cir.1996) (futility not cause to excuse

---

[10]Whether that possibility may be slight is irrelevant. The Eleventh Circuit has explained that, even if the likelihood of obtaining administrative relief is akin to that of being struck by lightning, an inmate must still exhaust administrative remedies. See Alexander, 159 F.3d at 1325 (quoting Irwin v. Hawk, 40 F.3d 347, 349 (11th Cir. 1994))("No doubt denial *is* the likeliest outcome, but that is not sufficient reason for waiving the requirement of exhaustion. Lightning may strike; and even if it doesn't, in denying relief the [administrative authority] may give a statement of its reasons that is helpful to the district court in considering the merits.").

13

procedural default). Furthermore, once state court procedures become available or the impediment to exhaustion is removed, the petitioner's failure to exhaust can no longer be excused. See Slater v. Chatman, No. 04-15683, 147 Fed. Appx. 959, 960, 2005 WL 2224843, at *1 (11th Cir. Sept. 15, 2005) (per curiam); see also Cristin v. Brennan, 281 F.3d 404, 411 (3d Cir. 2002) (district court should decline to hear petition if "previously stalled state proceedings resume").

Similarly, in the instant case, once Plaintiff arrived at Rutledge and administrative remedies became available, he could no longer bypass those procedures by filing a complaint in federal court. None of the PLRA's goals would be served by allowing Plaintiff to circumvent the out-of-time grievance process available at Rutledge. Section 1997e(a)'s goals are simple:

> 1) to avoid premature interruption of the administrative process; (2) to let the agency develop the necessary factual background upon which decisions should be based; (3) to permit the agency to exercise its discretion or apply its expertise; (4) to improve the efficiency of the administrative process; (5) to conserve scarce judicial resources, since the complaining party may be successful in vindicating rights in the administrative process and the courts may never have to intervene; (6) to give the agency a chance to discover and correct its own errors; and (7) to avoid the possibility that frequent and deliberate flouting of the administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures.

Johnson, 418 F.3d at 1156 (quoting Alexander, 159 F.3d at 1327).

Bearing these goals in mind, it is clear that the principal purpose of § 1997e(a) is to afford prison officials the first opportunity to resolve an inmate's claims on the merits.[11] See id. Although Plaintiff seeks to minimize the State's interest in having this opportunity, "it is 'difficult to imagine an activity in which a State has a stronger interest, or one that is more intricately bound up with state laws, regulations, and procedures, than the administration of

---

[11]In addition, the exhaustion requirement is meant to serve as a barrier to frivolous prisoner lawsuits. Johnson, 418 F.3d at 1157 (quoting Spruill v. Gillis, 372 F.3d 218, 230 (3d Cir. 2004)).

its prisons.'" Woodford, 548 U.S. at __, 2006 WL 1698937, at *7 (quoting Preiser v. Rodriguez, 411 U.S. 475, 491-492 (1973)).

Here, requiring Plaintiff to exhaust administrative remedies will give state prison officials the first opportunity to resolve Plaintiff's complaint mandated by § 1997e(a). Furthermore, exhaustion of the administrative process will allow for the development of the factual background of Plaintiff's claims. In addition, it should not be overlooked that, even should Plaintiff be denied relief via the administrative process, the administrative authority "'may give a statement of its reasons that is helpful to the district court in considering the merits of the claim.'" Alexander, 159 F.3d at 1325 (quoting Irwin, 40 F.3d at 349). Finally, requiring Plaintiff to exhaust administrative remedies in this case will reinforce the mandatory nature of the exhaustion requirement and discourage other inmates from "deliberate[ly] flouting" the administrative process.

**D.     Dismissal Should Be Without Prejudice.**

Accordingly, Defendants are entitled to summary judgment.[12] Nevertheless, the Court declines to recommend that the instant case be dismissed with prejudice. Cf. Johnson, 418 F.3d at 1157 (quoting Marsh v. Jones, 53 F.3d 707, 710 (5th Cir. 1995)) ("[w]ithout the prospect of a dismissal with prejudice, a prisoner could evade the exhaustion requirement by filing no administrative grievance or by intentionally filing an untimely one"). It is the longstanding practice of the presiding District Judge to dismiss cases such as this one without prejudice, in order that the prisoner-plaintiff may attempt to properly exhaust administrative remedies. Also of note, Defendants have not requested that Plaintiff's case be dismissed with prejudice. Thus, although it is at least arguable that a district court has authority to dismiss a prisoner's claims with prejudice for failure to exhaust administrative remedies, the Court

---

[12]The Court's conclusion in this regard pretermits consideration of Defendants' remaining arguments.

15

determines that it would not be appropriate to do so at this time.

That said, the Court should address Plaintiff's claim that requiring exhaustion will "close the courthouse door" on him. (Doc. no. 8, p. 7.) It is true that, if Plaintiff cannot satisfy the DOC's good cause standard, he will be unable to properly exhaust his claims and will procedurally default his claims. Johnson, 418 F.3d at 1159. It is also true that, because Plaintiff filed the instant complaint just before the applicable two-year statute of limitations expired,[13] he may be time-barred from refiling this action. Cf. Wendell v. Asher, 162 F.3d 887, 892 (5th Cir. 1998) (affirming dismissal without prejudice in the absence of any "apparent barriers" to refiling after administrative remedies are exhausted).

Nevertheless, if Plaintiff refiles, he will have an opportunity to demonstrate that he is entitled to equitable tolling. See Leal v. Georgia Dep't of Corr., 254 F.3d 1276, 1280 (11th Cir. 2001). More to the point, although the consequences of dismissal may be harsh in this case, refusing to require exhaustion would render § 1997e(a) toothless. Cf. Spruill v. Gillis, 372 F.3d 218, 228 (3d Cir. 2004) ("[A]n exhaustion requirement without a procedural default component is quite toothless."). If Congress had desired to exempt claims of sufficient merit or magnitude from §1997e(a)'s ambit, it would have done so.

In fact, the PLRA's so-called "three strikes" provision, 28 U.S.C. § 1915(g), contains just such an exemption. Section 1915(g) has the harsh result of barring a prisoner from proceeding *in forma pauperis* if he "has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(g). However, prisoners alleging "imminent danger

---

[13]See Mullinax v. McElhenney, 817 F.2d 711, 716 n.2 (11th Cir. 1987) (citing Williams v. City of Atlanta, 794 F.2d 624, 626 (11th Cir. 1986)); see also O.C.G.A. § 9-3-33.

of serious physical injury" are expressly exempted from § 1915(g)'s "three-strikes" rule. Id.

On the other hand, in crafting § 1997e(a), Congress provided no such exemption. "The PLRA does not excuse exhaustion for prisoners under imminent danger of serious physical injury." Arbuckle v. Bouchard, No. 03-01975, 92 Fed. Appx. 289, 291, 2004 WL 542170, at *2 (6th Cir. Mar. 16, 2004); accord Fuller v. Myers, No. 04-3210, 123 Fed. Appx. 365, 367-68, 2005 WL 408063, at 2 (10th Cir. Feb. 22, 2005); McAlphin v. Toney, 375 F.3d 753, 755 (8th Cir. 2004) (per curiam). If a prisoner fearing for his life must wait to exhaust administrative remedies before filing suit in federal court, there is no reason not to hold Plaintiff--who complains of mistreatment which occurred nearly two years before he filed his complaint--to the same requirement.

### III. CONCLUSION

For the above reasons, the Court **REPORTS** and **RECOMMENDS** that the motions for summary judgment (doc. nos. 2, 4-5, 7) be **GRANTED**, that Plaintiff's case be **DISMISSED** without prejudice for failure to exhaust administrative remedies, that an appropriate **FINAL JUDGMENT** be entered in favor of Defendants, and that this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 24th day of July, 2006, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

# United States District Court
## *Southern District of Georgia*

ATTORNEYS SERVED:

James L. Hardin
McNeill Stokes
Matthew Peter Stone
Devon Orland
John C. Jones
David R. Smith
Annarita M. Busbee
copy for tickler file

CASE NO:        CV606-3

DATE SERVED:  7/24/06

SERVED BY:     L. Flanders

☐  Copy placed in Minutes
☐  Copy given to Judge
☑  Copy given to Magistrate